# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Kimberly D. Peterson, on behalf on
Minor KDP, and KDP,

                  Plaintiffs,

v.

Commissioner of SSA,

                  Defendant.

_____/

Case No. 15-cv-14430

Judith E. Levy
United States District Judge

Mag. Judge Elizabeth A. Stafford

**OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION [14], GRANTING PLAINTIFFS' MOTION FOR EXTENSION OF TIME [15], DENYING PLAINTIFFS' OBJECTIONS [16], DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [10], AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]**

Plaintiff Kimberly D. Peterson, on behalf of her 16-year-old minor child K. D. P., filed this case on December 22, 2015, seeking that the Court reverse the decision of defendant Commissioner of Social Security Administration denying K. D. P.'s application for social security disability benefits. (*See* Dkt. 1.) The parties filed cross-motions for summary judgment, and on February 15, 2017, the Magistrate Judge filed a Report and Recommendation that defendant's motion (Dkt. 13)

be granted, plaintiffs' motion (Dkt. 10) be denied, and the Commissioner's decision be affirmed. (Dkt. 14 at 2.) Plaintiffs' filed untimely objections to the report and recommendation (Dkt. 16) and a motion for extension of time "due to computer error." (Dkt. 15.) Defendant consented to the late filing of the Objections (*id.* at 2), so the motion is granted and the merits of the objections will be addressed. For the reasons set forth below, the Court adopts the Magistrate Judge's Report and Recommendation, denies plaintiffs' objections, denies plaintiffs' motion for summary judgment, and grants defendant's motion for summary judgment.

I. **Background**

Plaintiff K. D. P. was born on December 4, 1999, and alleges that he began suffering from narcolepsy on November 18, 2012. (Dkt. 7-3 at 3.) His narcolepsy was confirmed by Dr. Gloria Chaney of the Children's Hospital of Michigan at the Detroit Medical Center in October 2013. (Dkt. 7-7 at 82.) Narcolepsy is "a chronic disorder that is characterized by permanent and over-whelming feelings of sleepiness . . . . that interferes with the[] ability to concentrate and perform daily functions." (*Id.* at 75.)

2

In December 2012, at the time he was repeating the sixth grade, K. D. P. had a Psychoeducational Evaluation at the request of his mother Kimberly Peterson. (*Id.* at 57-66.) The Evaluation was performed by Muna Mashrah, M.A., a Certified School Psychologist, who observed K. D. P. in the classroom, reviewed records, and received input from K. D. P.'s teachers and his mother. (*Id.* at 57.) K. D. P.'s teacher reported that he was performing at grade-level, but "he tends to fall asleep often" and "his progress is hindered by him sleeping in class." (*Id.* at 58.) Mashrah evaluated K. D. P. using the Woodcock Johnson Test of Cognitive Abilities, Third Edition, and concluded that K. D. P. performed at the average level in General Intellectual Ability, Visual-Spatial Thinking, Auditory Processing, Fluid Reasoning, Processing Speed, Short-term Memory, and Working Memory. (*Id.* at 61.) He performed below average in Long-term Retrieval and low in Comprehension-Knowledge (*id.*), which Mashrah qualified by noting that "limited exposure to vocabulary and experiences may have affected his performance on comprehension tasks." (*Id.* at 66.)

Mashrah also evaluated K. D. P. using the Woodcock Johnson Test of Achievement, Third Edition, and concluded that K. D. P. performed

3

at the average level for Basic Reading Skills and Math Calculation, but below average for Reading Comprehension, Reading Fluency, and Math Reasoning. (*Id.* at 63.) Mashrah concluded that K. D. P. "would benefit from academic interventions to target fractions, mathematical symbols, vocabulary, and abbreviations, as well as vocabulary words for reading comprehension" (*id.* at 63), but recommended against the need for special education services. (*Id.* at 66.)

Plaintiff Kimberly Peterson filed K. D. P.'s application for disability benefits on May 3, 2013, (Dkt. 7-5 at 1), and the Administrative Law Judge held a hearing on May 6, 2014. (Dkt. 7-2 at 52.) The ALJ found that K. D. P. was not disabled within the meaning of the Social Security Act (Dkt. 7-2 at 36-38), and the Appeals Council denied review. (Dkt. 7-2 at 2.) The ALJ's opinion is thus the final decision of the Commissioner.

## II. Standard

An applicant for disability benefits who is not satisfied with the Commissioner's final decision may obtain review in federal district court. 42 U.S.C. § 405(g). The district court "must affirm the Commissioner's conclusions absent a determination that the

4

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). The court may affirm, modify, or reverse the Commissioner's decision, and may also choose to remand the case for rehearing when appropriate. 42 U.S.C. § 405(g).

The Commissioner's findings of fact are given substantial deference on review and are conclusive if supported by substantial evidence. *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). If there is substantial evidence to support the Commissioner's decision, the district court must affirm it even if substantial evidence also supports a contrary conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *see also Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (if the decision is supported by substantial evidence, "it must be affirmed even if the

5

reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion").

When deciding whether there is substantial evidence to support the Commissioner's factual findings, the district court is limited to an examination of the record and should consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). However, neither the Commissioner nor the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

When a Magistrate Judge has submitted a Report and Recommendation and a party has filed timely objections, the district court conducts a *de novo* review of those parts of the Report and Recommendation to which the party objects. 28 U.S.C. § 636(b)(1)(C).

### III. Analysis

#### a. Objection 1

Plaintiffs first argue that the Magistrate Judge erred by finding that a medical advisor's opinion on equivalency was not required and

there was no need for an updated medical opinion based on new evidence in the record. (Dkt. 16 at 2.)

The Social Security Administration "requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6P, 1996 SSR LEXIS 3, at *8 (July 2, 1996). "When additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairment," the ALJ "must obtain an updated medical opinion from a medical expert." *Id.* at *9-10.

The ALJ found that K. D. P. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. §§ 416.924-.926. (Dkt. 7-2 at 39.) And the record includes the medical opinion of two state agency consultants, Jerry Evans, M.D., and Zahra Khademian, M.D., that K. D. P.'s "medically determinable impairment or combination of

7

impairments is severe, but does not meet, medically equal, or functionally equal the [relevant] listings." (Dkt. 47-3 at 8; *see* Dkt. 14 at 7.)

Plaintiffs argue that "[t]here is no medical evaluation and/or medical advisor's opinion concerning equivalency," and the "Magistrate [Judge] does not address this issue" but rather "simply argues that **a** medical opinion was submitted," which "does not address the requirement of a medical advisor's opinion." (Dkt. 16 at 2-3 (emphasis in original).) But this is directly contradicted by the assessment of Drs. Evans and Khademian, who opined that K. D. P.'s impairments do not "medically equal . . . the listings." (Dkt. 7-3 at 8.)

Plaintiff also argues that the Magistrate Judge erred by not recommending that the Court remand to the ALJ to obtain an updated medical opinion on the issue "of equivalence" (plaintiffs do not specify whether they mean medical or functional equivalence), given that "the opinion of the ALJ changed based on evidence received subsequent to the opinions of Drs. Evans and Khademian." (Dkt. 16 at 3.) But the ALJ did not change her opinion regarding *medical* equivalence, agreeing with the doctors that K. D. P.'s impairment did not medically

8

equal a listed impairment. (Dkt. 7-2 at 39.) Rather, the ALJ noted that "evidence received subsequent to" the opinion of Drs. Evans and Khademian "supported finding 'less than marked' limitations in other domains," which relates to *functional* equivalence.

The Social Security Administration does not require a medical expert opinion—and thus does not require an updated medical expert opinion given new evidence—to decide the issue of functional equivalence when considering childhood disability claims. *See* Social Security Administration's "Hearings, Appeals & Litigation Law Manual" ("HALLEX") I-5-4-30, 1993 WL 13011402, at *3 (March 19, 1993). And as noted above, an updated medical opinion is only required when, "in the opinion of the [ALJ]," the new evidence "may change the State agency medical or psychological consultant's finding that the impairment(s) is not" medically equal to a listed impairment. *See* SSR 96-6P, 1996 SSR LEXIS 3, at *9-10.

Nothing in the record suggests that the additional evidence cited by the ALJ might have changed the opinion of Drs. Evans or Khademian that K. D. P.'s impairment did not medically equal a listed impairment. To the contrary, the new evidence persuaded the ALJ that

9

K. D. P.'s condition had *improved* since their initial evaluation, with the use of medication and power napping, supporting a finding that K. D. P. "no longer [had] marked [limitations] in physical and wellbeing." (Dkt. 7-2 at 48.)

The ALJ obtained physician opinions on the issue of medical equivalence and did not need to obtain a new opinion, because the new evidence only related to the ALJ's findings regarding functional equivalence, for which medical expert opinions are not required in childhood disability cases. Plaintiffs do not point to any evidence to suggest that the ALJ should have determined that the new evidence would change the medical doctors' expert opinion as to medical equivalence. Thus plaintiffs' first objection is denied.

### b. Objection 2

Plaintiffs next argue that the Magistrate Judge erred by finding that the ALJ's decision was supported by substantial evidence. (Dkt. 16 at 3-5.)

According to plaintiffs, even if the ALJ's decision was supported by substantial evidence, it should not be upheld because the Social Security Administration's regulations were not followed, which

prejudiced K. D. P. on the merits. (*Id.* at 4.) Plaintiffs do not specify the regulations to which it is referring. Insofar as they may be referring to the regulations noted in their first objection, the Court has already held that the ALJ did not in fact violate those regulations.

Plaintiffs also argue that the evidence supports a finding of disability, and the ALJ and Magistrate Judge "misconstrued medical evidence and testimony that ultimately, resulted in an inadequate determination to address [K. D. P.]'s multiple severe medical conditions (specifically, narcolepsy and asthma)." (*Id.* at 4.) Plaintiffs point to evidence that K. D. P. suffers "excessive daytime sleepiness" that makes him "unable to be attentive in his school classes, stay on task[,] or complete assignments in a timely manner." (*Id.*) They also highlight evidence that K. D. P.'s "grades suffer as a result and he has been diagnosed with a learning disability," that he "is not allowed to travel alone for long periods," and that his medication causes "cramping and nausea," among other things. (*Id.* at 5.)

But even assuming that this evidence is enough to draw a conclusion contrary to that of the Commissioner, this Court must still affirm if there is also substantial evidence to support the

11

Commissioner's decision. *Cutlip*, 25 F.3d at 286 (if the decision is supported by substantial evidence, "it must be affirmed . . . even if substantial evidence also supports the opposite conclusion"). And there is.

Plaintiffs do not specifically note which conclusions by the ALJ regarding whether K. D. P. suffers from marked limitations are erroneous, instead arguing in general terms that the ALJ should have determined that K. D. P. was disabled. (Dkt. 16 at 5.) The Court assumes plaintiffs are making the same objection regarding substantial evidence that they made previously—that the ALJ erred in finding that K. D. P. did not have marked limitations in the domains of acquiring and using information and attending and completing tasks. (*See* Dkt. 10 at 14-16.)

The Social Security Administration defines a marked limitation as one "seriously interfering" with an applicant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). Pursuant to the regulations, in the domain of acquiring and using information adolescents should be able to do the following:

> In middle and high school, you should continue to demonstrate what you have learned in academic

> assignments (e.g., composition, classroom discussion, and laboratory experiments).  You should also be able to use what you have learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation).  You should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas). You should also learn to apply these skills in practical ways that will help you enter the workplace after you finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer).

20 C.F.R. § 416.926a(g)(2)(v).  And as to the domain of attending and completing tasks, adolescents should be able to do the following:

> In your later years of school, you should be able to pay attention to increasingly longer presentations and discussions, maintain your concentration while reading textbooks, and independently plan and complete long-range academic projects.  You should also be able to organize your materials and to plan your time in order to complete school tasks and assignments.  In anticipation of entering the workplace, you should be able to maintain your attention on a task for extended periods of time, and not be unduly distracted by your peers or unduly distracting to them in a school or work setting.

20 C.F.R. § 416.926a(h)(2)(v).

13

To treat K. D. P.'s narcolepsy, his treating physician, Amal Omran, M.D., prescribed Ritalin and advised that K. D. P. should take two to four fifteen-minute power naps as needed. (*See* Dkt. 7-7 at 35.) Since then, K. D. P. has "overall improvement in daytime sleepiness" and "mild improvement in his academic scores." (*See* Dkt. 7-2 at 41; 7-7 at 35.) In fact, he went from having failing grades to receiving "As and Bs in every subject." (Dkt. 7-2 at 41; *see* Dkt. 7-7 at 90.)

And Muna Mashrah, M.A., who conducted the Psychoeducational Evaluation that K. D. P.'s mother requested, noted that K. D. P. was "socially well-adjusted" and did "not display behavioral issues," and in reviewing his classroom performance and evaluative data, concluded that "there d[id] not appear to be an indication of significant academic impairments in reading or mathematics." (Dkt. 7-7 at 53.) Mashrah noted that the "evaluative data does not provide indications of a child with a learning disability" and that "cognitive testing revealed many strengths in the areas assessed." (*Id.*) There is also evidence that K. D. P. attended a mentoring program and participated in flag football after school. (Dkt. 7-2 at 64.) K. D. P.'s mother testified that "[a]ll he do[es] is exercise, lift weights." (*Id.* at 66.)

14

Substantial evidence supports the ALJ's finding that K. D. P. had less than marked limitations in the areas of acquiring and using information and attending and completing tasks. His grades, information provided by his teachers, the testimony of Kimberly Peterson, and the psychoeducational evaluation performed by Muna Mashrah substantially support the ALJ's finding that K. D. P. can perform these functional domains with less than marked limitations. Thus, plaintiffs' second objection is denied.

## IV. Conclusion

For the reasons set forth above, the Report and Recommendation (Dkt. 14) is ADOPTED, plaintiffs' motion for extension of time (Dkt. 15) is GRANTED, plaintiffs' objections (Dkt. 16) are DENIED, plaintiffs' motion for summary judgment (Dkt. 10) is DENIED, and defendant's motion for summary judgment (Dkt. 13) is GRANTED.

IT IS SO ORDERED.

| | |
|---|---|
| Dated: April 28, 2017<br>Ann Arbor, Michigan | s/Judith E. Levy<br>JUDITH E. LEVY<br>United States District Judge |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's

ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 28, 2017.

<u>s/Felicia M. Moses</u><br>
FELICIA M. MOSES<br>
Case Manager